Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| GISELA VÁZQUEZ SERRANO<br><br>Apelante<br><br>v.<br><br>BANCO POPULAR DE PUERTO RICO, ET ALS.<br><br>Apelado | KLAN202400923 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: LP2022CV00187<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de noviembre de 2024.

Comparece Gisela Vázquez Serrano (en adelante, señora Vázquez Serrano o parte apelante) mediante un recurso de *Apelación* para solicitarnos la revisión de la *Sentencia* emitida el 12 de junio de 2024, y notificada el 13 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, TPI).[1] Mediante la *Sentencia* apelada, el foro primario declaró Ha Lugar una solicitud de sentencia sumaria instada por el Banco Popular de Puerto Rico, *et al* (en adelante, BPPR o parte apelada) y, en consecuencia, desestimó la demanda con perjuicio.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

El presente caso inició el 17 de junio de 2024, cuando la señora Vázquez Serrano incoó una *Demanda* sobre daños y perjuicios contra el Banco Popular de Puerto Rico (BPPR o parte apelada); Compañías A y B; Aseguradoras Desconocidas;

---

[1] Apéndice del recurso, a las págs. 205-216. Véase el SUMAC, a la Entrada 41.

Número Identificador

SEN2024_____

Compañías XYZ; y Mengano del Cual, un Tercero Responsable Desconocido.[2] Adujo que, el 18 de mayo de 2022, se encontraba caminando por el área de estacionamiento de una sucursal de BPPR en Las Piedras. Esbozó, en síntesis, que, alegadas condiciones y circunstancias peligrosas y no aparentes en la superficie del estacionamiento, provocaron que la apelante sufriera una caída con múltiples heridas, fractura en el hueso húmero, contusiones, golpes, laceraciones e inflamación en su brazo, hombro izquierdo, en su cuerpo y extremidades. Arguyó que los daños sufridos por la apelante ascendían a $250,000.00 dólares y las angustias mentales y otras consecuencias adicionales ascendían a $250,000.00 dólares. Además, expresó que el tratamiento médico (gastos médicos y transportación) de la apelante había tenido un costo de $10,000.00 dólares. Por lo anterior, solicitó al tribunal de instancia que se declarara Ha Lugar la demanda y concediera, además, una cantidad razonable por concepto de honorarios de abogado.

Por su parte, el 2 de febrero de 2024, BPPR presentó su *Contestación a Demanda.*[3] En esencia, el BPPR negó las alegaciones y esbozó defensas afirmativas. Además, solicitó al tribunal de instancia que desestimara con perjuicio la demanda incoada.

Consecuentemente, el 9 de febrero de 2024, BPPR presentó una *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba.*[4] En síntesis, alegó que concluido el descubrimiento de prueba era innegable que la señora Vázquez Serrano no contaba con evidencia alguna y/o suficiente para probar los elementos indispensables para su causa de acción. De igual forma, adujo que esta última no fue consistente al describir el tipo de caída ya que en ocasiones las describió como un tropiezo y, en otras como un resbalón. A

---

[2] Apéndice del recurso, a las págs. 1-2.
[3] *Íd.,* a las págs. 3-10.
[4] *Íd.,* a las págs. 11-171.

consecuencia de lo antes expuesto, solicitó que se declarara Con Lugar la solicitud de sentencia sumaria por insuficiencia de prueba y que se desestimara con perjuicio la presente reclamación.

En reacción, el 2 de mayo de 2024, la señora Vázquez Serrano presentó su *Oposición a Moción de Sentencia Sumaria*.[5] Esgrimió que gozaba de prueba directa y circunstancial para sostener, o al menos crear dudas, sobre la existencia de la condición de peligrosidad en su negocio y sobre el conocimiento de BPPR de la referida condición. Puntualizó que la referida evidencia sobre los elementos de la causa de acción y la responsabilidad extracontractual por el daño sufrido por la señora Vázquez Serrano obligaban a la celebración de una vista evidenciaria. Luego, el 17 de mayo de 2024, el BPPR presentó una *Réplica a "Oposición a Solicitud de Sentencia Sumaria"*.[6]

En respuesta, el 12 de junio de 2024, y notificada el 13 de junio de 2024, el tribunal de instancia emitió la *Sentencia* apelada.[7] Mediante la *Sentencia* apelada, el foro primario declaró *Ha Lugar* una solicitud de sentencia sumaria instada por el BPPR y, en consecuencia, desestimó la demanda con perjuicio.

Como parte de la *Sentencia* emitida, el tribunal de instancia emitió las siguientes determinaciones de hechos:

1. La demandante es mayor de edad.

2. BPPR opera una sucursal que ubica en el Municipio de Las Piedras.

3. El 18 de mayo de 2022, en un día soleado alrededor de la 1:00 pm, la demandante acudió a la sucursal de Las Piedras a retirar dinero del cajero automático ubicado en el servi-carro. Como no pudo retirar el dinero de ese cajero, procedió a estacionar su vehículo en el estacionamiento de la sucursal.

4. Una vez se estacionó, se bajó del carro y se dispuso a caminar hacia el banco cuando, *"de momento trope[zó]*

---

[5] Apéndice del recurso, a las págs. 172-191.
[6] *Íd.,* a las págs. 192-204.
[7] *Íd.,* a las págs. 205-216. Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la Entrada 41.

*ahí con una cosa que tiene el piso"* y se cayó, desplazándose hacia el frente.

5. Sobre el lugar donde alega haberse tropezado, la demandante lo describe en la deposición de la siguiente manera: *"[c]uando me estacioné en el carro, abrí todas las ventanas y me bajo. Aquí hay como unos desagües o algo que ellos hicieron, como un cuadrito. Ahí tropiezo yo […]"*.

6. La demandante identificó el lugar donde alega haberse tropezado con la letra "A", y lo circuló, en el Exhibit marcado como 4 de su deposición. El Exhibit 4 de la deposición consiste en una foto que la demandante tomó con su celular, la cual representa el área donde ésta alega haberse caído y recrea el estado en que estaba el día de la caída.

7. La demandante alega que tropezó con un borde, el cual, a su juicio, "está un poquito levantadito." Desconoce cuán levantadito está el borde porque no lo midió.

8. Conforme al Exhibit 4 de la deposición (una foto del lugar de la alegada caída que la demandante tomó con su celular), la franja que une los espacios de cemento tiene un color distinto al del cemento propiamente.

9. Según la demandante, uno de los espacios de cemento es más "bajito" que el otro. Dicho desnivel está visible para cualquiera que visite el área. La demandante en su deposición expresó: *"Cualquiera que vaya allí lo ve."* En otra parte de la deposición expone: *"[E]s obvio. Eso se ve a los cuatro (4) vientos que es un peligro para cualquier persona."*

10. La Sra. Vázquez desconoce cuánta profundidad tiene el desnivel con el cual alega haberse tropezado porque no lo midió.

11. La Sra. Vázquez entiende que lo que hay entre las dos áreas de cemento es una zanja, o un declive por donde baja el agua cuando llueve. Según describió, las áreas de cemento a ambos lados de la zanja están un poquito más altos que ésta. Sobre el particular, en su deposición, describió la demandante lo siguiente:

> *"R: Se ve como así. Se ve como si tu [sic] hicieras una zanja. Está la zanja, ¿verdad? Está la zanja y está sobresalida. La zarja va a pasar por ahí. El agua va a pasar por ahí y esto tiene, esto es más alto que la raja esa, que la cuneta esa o como le digan.*
> *P: Ujum.*
> *R: Es un chispito más alto.» Exhibit 1, p. 75, líneas 16-22.*

12. La Sra. Vázquez no sabe si la unión que hay entre las dos áreas de cemento -lo cual ella describe como una zanja- es una expansión; tampoco sabe con qué propósito se hizo.

13. No hay nada roto, deteriorado ni agrietado en el área donde la demandante alega haberse caído.

14. La Sra. Vázquez alegó en la Demanda que "el área presentaba condiciones inadecuadas, peligrosas y deterioradas a raíz de una grieta, hendidura o zanja de forma estrecha e irregular en la superficie, con un cuadro de concreto añadido" por lo que entiende, el área está mal hecha, o tiene un defecto de diseño.

15. El cuadro de concreto añadido al cual se refiere la demandante cuando alega la existencia de un defecto de diseño está identificado en el Exhibit 4 de su deposición con un círculo y la letra B.

16. La demandante no tiene prueba para establecer, ni siquiera puede precisar en qué exactamente consiste, el defecto de diseño. Al describirlo haciendo referencia a la foto que ella misma tomó del área alegadamente defectuosa, indicó en la deposición lo siguiente:

> *P: Ok. Cuando usted dice que hay un cuadro de concreto añadido, ¿a que usted se refiere?*
> *R: A esto que está aquí.*
> *P: Márqueme por favor con un círculo, póngale una letra B.*
> *R: Esto se ve como si estuviera añadido. Y entonces será que está sobre éste. No sé. Véase, Exhibit 1, p. 77, líneas 10-16.*
>
> *P: Ok, bien. Entonces el cemento sobrepuesto o el concreto añadido, es esa parte que usted identifica con la letra B.*
> *R: Ujum.*
> *P: Ok.*
> *R: Eso es como si tiraran esta parte primero y esto la tiraran después. Es lo que yo entiendo. Véase, Exhibit 1, p. 79, líneas 10-16.*

17. No obstante, la demandante entiende que BPPR debió haber corregido el alegado defecto de diseño y, como no lo hizo, le responde por la caída.

18. La demandante no es consistente en cuanto a su relato sobre cómo ocurrió la caída. Aunque sostiene que se tropezó, también declaró que se resbaló.

Al indicar dónde se cayó, dijo: *"detrás de ese mismo carro es que está el cuadrito donde está la zanja y ahí es donde yo me resbalo."*

19. Más adelante en su deposición, declaró que siguió resbalando y que, tras el resbalón, su cuerpo recorrió una distancia de 4 o 5 pies.

20. Cayó sobre el lado izquierdo de su cuerpo. La Sra. Vázquez desconoce con cuál pie tropezó.

21. El lugar donde la demandante alega haberse caído es una superficie de cemento la cual, según su percepción, es lisa como un cristal, sin abolladuras.

22. Durante los dos años previos a la fecha en que alega haberse caído, la demandante visitó la sucursal de Las Piedras varias veces.

23. El día de la caída, la demandante se estacionó de frente a la acera. Aunque podía caminar por la acera en lugar de hacerlo por el estacionamiento, no lo hizo. Ni siquiera pasó por su mente caminar por la acera.

24. Aunque la acera [de frente a la cual se estacionó] es más segura para caminar, la Sra. Vázquez no la usa cuando visita la sucursal. De hecho, nunca ha caminado por esa acera.

25. La demandante prefiere caminar por el estacionamiento porque así evita retrasarse con la gente que se detiene a hablar en la acera. Según ella, *"es más fácil caminar por el parking porque en la acera la gente se pone a saludarse y cuando vienes a ver el Banco se llena."* Siempre lo ha hecho así.

26. Mediante carta del 26 de septiembre de 2022, a través de su representante legal, la demandante notificó una reclamación extrajudicial a BPPR. En ésta, la demandante alegó haberse caído mientras caminaba por el área de estacionamiento, la cual "presentaba una grieta o zanja estrecha irregular con un cuadrado de concreto añadido resultante en peligrosidad y condición inadecuada no aparente."

27. El Sr. Francisco Sosa Soriano, Ajustador de Universal Insurance Company, investigó la reclamación. Como parte de su investigación, entrevistó al Sr. Jaime Ripoll, gerente de la sucursal, e inspeccionó el estacionamiento donde la demandante alegó haberse caído, y las aceras aledañas, luego de lo cual preparó un informe.

28. Según se desprende de dicho informe, el Sr. Sosa visitó el predio, incluyendo el área descrita por el representante legal de la demandante, y constató que:

    a. el estacionamiento ni las aceras aledañas presentaban condiciones como las descritas en la reclamación extrajudicial; por el contrario, dichas áreas no tenían grietas,

irregularidades, cuadros de concretos añadidos ni nada que obstruyera el libre caminar de los clientes;

b. dichas áreas permanecían según lo estaban para la fecha de la alegada caída, es decir, no habían sido alteradas, reparadas ni modificadas en modo alguno;

c. en dicho estacionamiento hay una acera peatonal espaciosa y en excelentes condiciones que discurre a lo largo de más de cien (100) pies, desde el estacionamiento hasta la entrada de la sucursal, con un ancho de más de cinco (5) pies, la cual permite que los clientes se muevan libremente por los predios sin tener que caminar por el área vehicular;

d. el cajero automático que se encuentra en la parte del frente del banco tiene otra acera que mide nueve (9) pies y once (11) pulgadas de ancho, por treinta (30) pies de largo, en iguales condiciones.

29. La Sra. Vázquez alega que BPPR debía conocer la existencia del desnivel - y debía haberlo corregido- porque es obvio. Según ella, el desnivel o defecto al cual adscribe su caída está visible para cualquiera que visite el área. "Cualquiera que vaya allí lo ve." "[E]s obvio. Eso se ve a los cuatro (4) vientos que es un peligro para cualquier persona."

30. BPPR tiene y, para la fecha pertinente al presente reclamo, tenía un contrato con la entidad Facilities Management & Janitorial Service para el mantenimiento de la sucursal conforme al cual, en lo relevante a este caso, los empleados de dicha compañía limpian y mantienen el exterior de la sucursal, manteniéndola en condiciones adecuadas para los visitantes.

31. Como gerente de la sucursal para la fecha en que la demandante alega que ocurrió la caída, el Sr. Jaime Ripoll rutinariamente inspeccionaba las distintas áreas de la sucursal, incluyendo el estacionamiento y aceras en el exterior, para confirmar que éstas estuviesen en condiciones adecuadas y seguras para los visitantes y empleados del banco. De identificar algún peligro o condición que hubiese que eliminar, oportunamente se implementaban las medidas para evitar un accidente. En ninguna de las inspecciones que éste llevó a cabo cerca a la fecha en que alegadamente ocurrió la caída, identificó una condición peligrosa o de riesgo en las instalaciones de BPPR.

32. El Sr. Ripoll no recibió ningún reporte ni notificación de alguna condición peligrosa en el estacionamiento o en

las facilidades externas de la sucursal en o alrededor de la fecha en que alegadamente se cayó la demandante.[8]

En la *Sentencia* apelada, el tribunal apelado concluyó que

[c]onforme los hechos no controvertidos la demandante no tiene prueba pericial que relacione algún alegado acto de la demanda con el daño. La única prueba con la que cuenta la parte demandante es su propio testimonio. La parte demandante no cuenta con una medida tomada de la alegada estructura. Conforme lo establece la jurisprudencia aplicable[,] la relación de causalidad no puede establecerse a base de especulaciones o conjeturas. En conclusión, la parte demandante no cuenta con prueba para probar su caso por lo que procede la desestimación de la causa de acción por insuficiencia de prueba.[9]

En desacuerdo, el 28 de junio de 2024, la apelante instó una *Moción de Reconsideración*,[10] la cual fue denegada mediante *Resolución* emitida el 11 de septiembre de 2024, notificada el 13 de septiembre de 2024.[11] El tribunal justificó su determinación en el hecho que la parte apelante no probó contar con evidencia para establecer la causalidad y la negligencia de la parte apelada. La única prueba que le proveyó al tribunal fue su propio testimonio.

Insatisfecha aun, el 15 de octubre de 2024, la apelante presentó un *Escrito de Apelación* en el cual esgrimió la comisión del siguiente error:

Erró el Honorable TPI al desestimar sumariamente la demanda alegando responsabilidad extracontractual bajo el Art. 1536 del Código Civil de 2020 a raíz de una caída en un estacionamiento, porque según la Regla 36 de Procedimiento Civil de 2009 existen genuinas controversias de hechos materiales y esenciales sobre la negligencia, en particular la condición de la peligrosidad y la causalidad de conformidad a la prueba presentada en esta etapa.

Mediante *Resolución* emitida el 18 de octubre de 2024, concedimos a la apelante hasta el 24 de octubre de 2024, para acreditar el cumplimiento con la Regla 13(B) y 14(B) del Reglamento de este Tribunal de Apelaciones.[12] Por otro lado, concedimos a la

---

[8] Apéndice del recurso, a las págs. 206-209.
[9] *Íd.,* a las págs. 215-216.
[10] *Íd.,* a las págs. 217-225.
[11] *Íd.,* a las págs. 226-230. Véase, el SUMAC, a la Entrada 44.
[12] 4 LPRA Ap. XXII-B, R. 13(B) y R. 14(B).

parte apelada hasta el 14 de noviembre de 2024, para presentar su alegato en oposición.

En cumplimiento con lo ordenado, el 24 de octubre de 2024, la apelante presentó una *Moción en Cumplimiento de Orden.* En su escrito, acreditó haber notificado el recurso, específicamente, a la parte apelada. En atención a lo anterior, el 28 de octubre de 2024, ordenamos a la apelante a acreditar haber notificado el recurso al TPI. Subsiguientemente, el 29 de octubre de 2024, presentó una *Moción en Cumplimiento de Orden* con la correspondiente acreditación. Por otro lado, el 14 de noviembre, la parte apelada presentó una solicitud de prórroga para presentar su alegato en oposición. En atención a esta petición, le concedimos hasta el 20 de noviembre de 2024 a las 11:00 a.m. para presentar su alegato en oposición.

En cumplimiento con lo ordenado, el 20 de noviembre de 2024, la parte apelada presentó su *Alegato en Oposición a Apelación.* Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

## II

### A. Apelación Civil

La Regla 52.2 (a) de Procedimiento Civil[13], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[14] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[15]

---

[13] 32 LPRA Ap. V, R. 52.2 (a).
[14] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA,* 106 DPR 357, 360 (1977).
[15] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).

Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> [...].[16]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[17] En tal caso, el curso del término para apelar comienza a partir del archivo en autos de la copia de la notificación de la resolución que resuelve la moción.[18] Esto, a pesar de que la moción se haya declarado sin lugar.

De otra parte, precisa señalar que en grado de apelación, la tarea principal del Tribunal de Apelaciones es examinar como los tribunales inferiores aplican el derecho a los hechos particulares de cada caso y si abusaron de su discreción.[19] El foro apelativo no debe pretender administrar ni manejar el trámite regular de los casos ante el foro primario.[20] Así, pues, si las determinaciones del tribunal no están desprovistas de base razonable ni perjudican los derechos de una parte, debe prevalecer el criterio del juez de instancia.[21] Por ello, se ha establecido que los foros apelativos no deben intervenir con las facultades discrecionales del tribunal de instancia, a menos que se demuestre que: (i) actuó con perjuicio o parcialidad; (ii) abusó de su discreción, o (iii) se equivocó en la interpretación o aplicación

---

[16] 4 LPRA Ap. XXII-B, R. 13 (A).
[17] 32 LPRA Ap. V, R. 47.
[18] *Íd.*
[19] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 707 (2013); *Sierra, Secretario del Trabajo v. Tribunal Superior*, 81 DPR 554, 572 (1958).
[20] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).
[21] *Sierra, Secretario del Trabajo v. Tribunal Superior, supra,* 572.

de cualquier norma procesal o derecho sustantivo. Igualmente, se permite intervenir para evitar un perjuicio sustancial.[22]

**B. Sentencia Sumaria**

Como es sabido, en nuestro ordenamiento, el mecanismo de la sentencia sumaria está regido por la Regla 36 de las Reglas de Procedimiento Civil[23], la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal.[24] El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[25] Solamente debe ser dictada una sentencia sumaria "en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[26]

El propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[27] En otras palabras, el tribunal procederá a dictar sentencia sumaria solo cuando esté claramente convencido que la vista evidenciaria es innecesaria.[28] Al no haber controversia sustancial y real sobre hechos materiales, sólo falta aplicar el derecho pertinente a la controversia.[29] Por lo tanto, una controversia en torno a hecho no materiales, de existir, no impide que el tribunal dicte una sentencia por la vía sumaria.[30]

---

[22] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023).
[23] 32 LPRA Ap. V, R. 36.
[24] *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).
[25] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).
[26] *Íd. Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 720-721 (1986); *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 726 (1994); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).
[27] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).
[28] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).
[29] *García Rivera et al. v. Enríquez, supra.*
[30] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 958 (1993).

En lo pertinente al término para presentar una solicitud de sentencia sumaria, la Regla 36.2 de las Reglas de Procedimiento Civil dispone lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[31]

En consonancia con lo anterior, el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios judiciales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo.[32] La Regla 36.3 de las Reglas de Procedimiento Civil[33], detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (i) una exposición breve de las alegaciones de las partes; (ii) los asuntos litigiosos o en controversia; (iii) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (iv) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (v) las

---

[31] 32 LPRA Ap. V, R. 36.2.

[32] *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615, 630 (2009); *Padín v. Rossi*, 100 DPR 259, 263 (1971); *William Pérez Vargas v. Office Depot /Office Max, Inc.*, 203 DPR 687, 699 (2019).

[33] 32 LPRA Ap. V. R. 36.3.

razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y, (vi) el remedio que debe ser concedido.[34]

Por su parte, la Regla 36.3 inciso (a)(4) de las Reglas de Procedimiento Civil dispone:

(a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: ...
(4) **una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal...[35]**

Asimismo, y en lo pertinente al caso ante nos, la Regla 36.3(b) de las Reglas de Procedimiento Civil dispone lo siguiente:

(b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
(1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior; (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.[36]

Por otro lado, la Regla 36.3 inciso (c) de las Reglas de Procedimiento Civil lee como sigue:

(b) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones

---

[34] 32 LPRA Ap. V. R. 36.3; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *William Pérez Vargas v. Office Depot / Office Max, Inc.*, *supra*, 698.
[35] 32 LPRA Ap. V, R. 36.3 (a)(4).
[36] 32 LPRA Ap. V, R. 36.3 (b).

contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. [37]

Cumplidos estos requisitos, el inciso (e) de la Regla 36.3 de las Reglas de Procedimiento Civil establece que:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[38]

Sin embargo, el solo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria.[39]

Conforme ha resuelto el Tribunal Supremo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a demostrar que [tiene] prueba para sustanciar sus alegaciones".[40] Las meras afirmaciones no bastan.[41] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[42]

Ahora bien, reiteradamente el Tribunal Supremo ha indicado que, el mecanismo de sentencia sumaria no es el apropiado para resolver casos en donde hay elementos subjetivos, de intención,

---

[37] 32 LPRA Ap. V, R. 36.3 (c).

[38] 32 LPRA Ap. V, R. 36.3 (e); *García Rivera et al. v. Enríquez,* 153 DPR 323, 338 (2001); *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation, supra,* 225; *SLG Zapata-Rivera v. J. F. Montalvo, supra,* 430.

[39] *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra,* 913; *García Rivera et al. v. Enríquez,* 153 DPR 323, 338 (2001); *Consejo Tit. C. Parkside v. MGIC Fin. Corp.,* 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez, supra,* 281; *Corp. Presiding Bishop CJS of LDS v. Purcell, supra,* 721.

[40] *Flores v. Municipio de Caguas,* 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión,* 178 DPR 200, 215-216 (2010).

[41] *Íd.*

[42] *Ramos Pérez v. Univisión, supra,* 215; *Roldán Flores v. M. Cuebas, Inc., supra,* 677.

propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[43] De la misma manera, también ha dicho que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[44]

El Tribunal Supremo se expresó en cuanto al proceso de revisión de las sentencias sumarias y estableció que en dicho proceso el Tribunal de Apelaciones debe: (i) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de las Reglas de Procedimiento Civil[45], y la jurisprudencia le exigen al foro primario; (ii) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36 de las Reglas de Procedimiento Civil[46]; (iii) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de las Reglas de Procedimiento Civil[47], de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; y, (iv) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[48]

La sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas;

---

[43] *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 663 (2017).
[44] *Elías y otros v. Chenet y otros, supra; García López v. Méndez García,* 88 DPR 363, 380 (1963).
[45] 32 LPRA Ap. V, R. 36.
[46] *Íd.*
[47] 32 LPRA Ap. V, R. 36.4.
[48] *Roldán Flores v. M. Cuebas, et al., supra,* 679-680; *Meléndez González v. M. Cuebas,* 193 DPR 100, 118-119 (2015).

(iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (iv) como cuestión de derecho, no proceda.[49] Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos (2) maneras: (i) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y, (ii) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[50] Las partes no pueden añadir en apelación exhibit[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo.[51] Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos.[52] También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia.[53]

### C. Responsabilidad Civil Extracontractual

El Artículo 1536 del Código Civil de Puerto Rico de 2020 establece que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.[54] Para que exista responsabilidad bajo este precepto, es necesario: (1) que ocurra un daño; (2) que haya una acción u omisión culposa o negligente; y (3) que exista una relación causal entre el daño y la conducta culposa o negligente.[55]

---

[49] *SLG Fernández-Bernal v. RAD-MAN*, 208 DPR 310, 335 (2021).
[50] *Meléndez González v. M. Cuebas, supra*, 114.
[51] *Íd.*
[52] *Íd.*, 115.
[53] *Vera v. Bravo*, 161 DPR 308, 335 (2004).
[54] Art. 1536 del Cód. Civil de P.R., 31 LPRA sec. 1536.
[55] *García v. ELA*, 163 DPR 800 (2005); *Administrador v. ANR*, 163 DPR 48 (2004); *Valle v. ELA*, 157 DPR 1 (2002); *Montalvo v. Cruz*, 144 DPR 748 (1998); *Elba A.B.M. v. U.P.R.*, 125 DPR 294 (1990).

**III**

En el caso de autos, la parte apelante aduce que erró el TPI al desestimar sumariamente su acción en daños contra el BPPR bajo el Art. 1536 del Código Civil de 2020. Particulariza que, según la Regla 36 de Procedimiento Civil, el tribunal estaba impedido de atender el caso del título por la vía sumaria debido a que permeaban controversias genuinas sobre hechos materiales y esenciales sobre la negligencia, en particular sobre la condición de peligrosidad y causalidad de conformidad con la prueba presentada. Establece que, en los casos de caídas no es indispensable el testimonio pericial para establecer la condición de peligrosidad ya que estos casos no involucran cuestiones técnicas, científicas ni especialidades particulares como ocurre en los casos de impericia médica. Asimismo, afirma que cuando se quiere impugnar a un testigo por medio de manifestaciones anteriores, es preciso sentar las bases y proveerle a este último la oportunidad de explicar o negar la declaración antes hecha. De otra parte, concluye su recurso apelativo proveyendo un resumen de la prueba y sostiene que es suficiente para establecer propiamente todos los elementos de la causa de acción por responsabilidad extracontractual. En la alternativa, propone que la prueba presentada establece genuinas controversias sobre hechos esenciales. No le asiste la razón. Veamos.

En cumplimiento con nuestro deber como foro apelativo, revisamos *de novo* la solicitud de sentencia sumaria incoada por BPPR, la oposición y la correspondiente réplica. Lo anterior a los efectos de evaluar si el TPI actuó correctamente al desestimar sumariamente la demanda de epígrafe bajo el fundamento de que la parte apelante no cuenta con prueba para probar su caso. Al hacer el correspondiente estudio del expediente, precisamos que el dictamen objeto de revisión en el presente caso versa sobre un

asunto procesal en el cumplimiento del procedimiento establecido por nuestras Reglas de Procedimiento Civil para atender una solicitud de sentencia sumaria.

Surge del expediente apelativo que, en su *Solicitud de Sentencia Sumaria por Insuficiencia de Prueba*, la parte apelada incluyó un breve resumen de las alegaciones y de los asuntos en controversia. Del mismo modo, estableció los hechos no controvertidos, el derecho aplicable y proveyó documentación sobre el descubrimiento de prueba llevado a cabo entre las partes para sustentar que la parte apelante no contaba con evidencia para establecer los elementos de su reclamación.

En respuesta, la parte apelante presentó su correspondiente *Oposición a Moción de Sentencia Sumaria*. Sin embargo, la misma no cumplió con los requisitos de forma establecidos por la Regla 36.3 (b) y (c) de Procedimiento Civil. En su escrito, la parte apelante se limitó a proveer como evidencia de sus daños, la reclamación extrajudicial que le remitió a BPPR el 26 de septiembre de 2022, y las respuestas provistas por esta en el Interrogatorio que le fue provisto por BPPR. De igual forma, se limitó a hacer referencia a las alegaciones esbozadas en la demanda.

Es menester recordar que, en virtud de la normativa vigente en nuestro ordenamiento, la parte que se opone a una moción de sentencia sumaria no podrá descansar meramente en sus alegaciones. Del mismo modo, la parte debe proveer una relación concisa y organizada de los hechos esenciales y pertinentes que estuviesen realmente y de buena fe controvertidos, con indicación de los párrafos de la prueba admisible en evidencia donde se establecen esos hechos. Luego de estudiar minuciosamente el expediente ante nuestra consideración. Forzoso es concluir que los documentos presentados por la parte apelante en su oposición a sentencia sumaria no cumplen con el precitado requisito de forma

de nuestras Reglas de Procedimiento Civil. Más bien, la oposición presentada por la parte apelante omitió proveer prueba admisible de los hechos que adujo como controvertidos. Del mismo modo, una lectura a su escrito revela que la parte apelante no contestó de forma detallada y precisa el escrito presentado por BPPR.

Luego de presentada la solicitud de sentencia sumaria, la parte apelante debió haber argumentado puntualmente las razones por la cuales no correspondía dictar sentencia sumaria. Además, la parte apelante debió haber esbozado el derecho aplicable, así como que debió haber expresado de forma concreta la alegada condición de peligrosidad existente en el establecimiento de BPPR y cómo la misma fue la causa próxima del daño sufrido por la parte apelante. Esto no ocurrió. En ausencia de lo antes expuesto, colegimos que el foro primario estaba facultado a ejercer su discreción judicial para dictar una sentencia sumaria en contra de la parte apelante.

Es por todo lo anterior que forzosamente concluimos que el foro primario no cometió el error imputado, por lo que procede que confirmemos la *Sentencia* apelada.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones